JAMES M. FOLEY, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5384-83.    Filed September 17, 1986.

*John S. Yohanan,* for the petitioner.
*Milton Blouke,* for the respondent.

OPINION

JACOBS, *Judge*: Respondent determined the following deficiencies in petitioner's Federal income taxes:

| Taxable year | Deficiency |
| --- | --- |
| 1978 | $750 |
| 1979 | 6,854 |
| 1980 | 4,563 |

This case was submitted pursuant to Rule 122.[1] Pursuant to the Court's direction, a supplemental stipulation of facts was filed. At the time the supplemental stipulation of facts was filed, the Court permitted respondent to file an amendment to answer seeking additional deficiencies for 1978, 1979, and 1980 in the amounts of $1,254, $77, and $2,646, respectively, making the total amount in controversy $2,004 for 1978, $6,931 for 1979, and $7,209 for 1980.

The sole issue for decision is the proper treatment, for tax purposes, of payments made to petitioner, a citizen of the United States, pursuant to the Berlin Promotion Law.

Petitioner, a pilot employed by Pan American World Airways, Inc. (Pan Am), resided in West Berlin, Federal Republic of Germany (Germany), from August, 1978 through and including the time he filed his petition.[2] During

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954 as amended and as in effect during the taxable years in issue.

[2] From Jan. 1, 1978, to Aug. 9, 1978, petitioner resided in Incline Village, Nevada.

the taxable years in issue, he had foreign source income, earned while stationed in West Berlin, and paid German income taxes, through wage withholdings, at a flat rate of 26 percent.

Petitioner received incentive payments of $2,068, $6,931, and $7,209, in 1978, 1979 and 1980, respectively, pursuant to Berlinfoerderungsgesetz (the Berlin Promotion Law).[3] Pursuant to articles 21 and 28 of the Berlin Promotion Law, benefits are offered to two categories of individuals: those who reside in West Berlin, and those who work there. The benefit offered to individuals who reside in West Berlin is a 30 percent reduction in German income taxes, pursuant to article 21. The benefit offered to individuals who work in West Berlin is an incentive payment pursuant to article 28.[4]

The two benefits (tax reduction and incentive pay) are not cumulative; the tax reduction is granted only to the extent it exceeds the incentive pay. The incentive pay is not includable in income for purposes of German income tax laws.

The treaty between the United States and Germany (the treaty) pertaining to tax matters[5] contains the following provisions:

### Article X

(1) Compensation for labor or personal services (including compensation derived from the practice of a liberal profession and the rendering of services as a director) performed outside the United States by a natural person resident in the Federal Republic shall be exempt from tax by the United States.

\*    \*    \*    \*    \*    \*    \*

### Article XV

(1) It is agreed that double taxation shall be avoided in the following manner:

(a) The United States, in determining United States tax in the case of its citizens, residents or corporations, may, regardless of any other provision of this Convention, include in the basis upon which such tax is imposed all items of income taxable under the revenue laws of the United States as if this Convention had not come into effect. The United States shall,

---

[3]Berlinfoerderungsgesetz of 23 February 1982, BGBI 1982 I p. 225, as amended by the Law of 20 December 1982, BGBI 1982 I p. 1828.

[4]The incentive payment is equal to 8 percent of income earned in West Berlin.

[5]T.I.A.S. 3133, 5 U.S.T. 2768, 1955-1 C.B. 635, as amended T.I.A.S. 5920, 16 U.S.T. 1883, 1885-1886, 1966-1 C.B. 360.

however, allow to a citizen, resident or corporation of the United States as a credit against United States tax the appropriate amount of Federal Republic tax paid, other than the Vermögensteuer (capital tax) and that portion of the Gewerbesteuer (trade tax) computed on a basis other than profits. Such appropriate amount shall be based upon the amount of Federal Republic tax paid but shall not exceed that portion of the United States tax which net income from sources within the Federal Republic bears to the entire net income. It is agreed, that, by virtue of the provisions of this Article, the Federal Republic satisfies the similar credit requirement of the Internal Revenue Code with respect to Federal Republic tax.

Petitioner did not report the incentive payments he received pursuant to the Berlin Promotion Law in his 1978, 1979, and 1980 U.S. income tax returns. He calculated the foreign tax credit allowable by section 901[6] by taking into account all taxes paid to the German government through wage withholdings.

Respondent contends that the incentive payments received by petitioner are includible in gross income under section 61, or in the alternative, that the incentive payments reduce petitioner's allowable foreign tax credit.[7]

Petitioner concedes that section 61 was intended by Congress to include in the U.S. tax base all income "from whatever source derived." He argues, however, that the incentive payments received are excludible from his U.S. income pursuant to the terms of the Berlin Promotion Law and the Treaty. Alternatively, he argues that the incentive payments were gifts, and thus excludible from his U.S. income either pursuant to section 102(a) or as payments made by a governmental unit to promote the general welfare. Petitioner does not make any argument pertaining to respondent's proposed adjustment to his foreign tax credit.

Petitioner's incentive payment under article 28[8] was slightly more than the tax reduction to which he was entitled under article 21[9]; therefore, none of the amounts received by petitioner was in discharge of the article 21

---

[6]The amount of tax paid to the German Government in 1978, 1979, and 1980 was $6,721, $22,527, and $23,429, respectively.

[7]This alternative argument was first raised in respondent's amendment to answer, thus respondent bears the burden of proof with respect to such argument. Rule 142(a).

[8]The incentive payments amount to $2,068 in 1978, $6,931 in 1979, and $7,209 in 1980; these are the amounts petitioner actually received.

[9]The tax reduction would have been $2,017 in 1978, $6,758 in 1979, and $7,029 in 1980.

benefit. As petitioner did not receive any reduction or rebate of the taxes he paid to the German government, he properly calculated his foreign tax credit by taking all taxes paid to the German government into account. We must still decide, however, whether petitioner should have included in income the incentive payments he received from the German government under article 28.

Neither the treaty nor the Berlin Promotion Law assists us in properly analyzing the consequences of the payments for purposes of U.S. income tax laws. Because amounts received pursuant to the Berlin Promotion Law are not includable in income for purposes of computing tax liability to Germany, article XV of the treaty, which is designed to prevent double taxation, does not apply.[10] Because payments received pursuant to the Berlin Promotion Law are not compensation for services, article X of the treaty, which exempts such payments from tax by the United States, also does not apply. The tax liability of petitioner, as a citizen of the United States, is determined by the provisions of the Internal Revenue Code. Sec. 1.1(b), Income Tax Regs.

Section 61 contemplates a tax on all income "from whatever source derived"; there is no doubt that the U.S. taxes its citizens on their worldwide incomes. *Filler v. Commissioner*, 74 T.C. 406 (1980); *Crerar v. Commissioner*, 26 T.C. 702 (1956). "Income" means accessions to wealth, clearly realized, over which a taxpayer has complete dominion. Section 61 is intended to tax all gains, except those specifically exempted. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426 (1955).

Petitioner argues that section 102 specifically exempts the amounts he received from the German Government from taxation. In order to determine whether the transfers to petitioner were gifts within the meaning of section 102, we must examine the motives of the German Government, the putative donor, in making such transfers. A transfer, in order to be a gift, must be made from a detached and

---

[10]Petitioner argues that because (1) the Berlin Promotion Law provides that the incentives are not earnings subject to German taxation, (2) the Berlin Promotion Law was adopted in toto by the City Council of West Berlin and (3) the city of West Berlin is governed by the Joint Allied Command, which in turn is subject to the approval of the U.S. Congress, it can be inferred that Congress has given implied approval to exemption of incentive payments under the Berlin Promotion Law from U.S. income taxation. We find this argument creative, but unpersuasive, and we reject it.

disinterested generosity, out of affection, respect, admiration, charity or like impulses. *Commissioner v. Duberstein*, 363 U.S. 278 (1960). There is no gift where a payment is made in anticipation of future economic benefits.

Petitioner's relationship with the German government is not one that is characterized by such affection, respect or disinterested generosity that the German government would make payments to petitioner without expecting anything in return. On the contrary, the Berlin Promotion Law is designed to encourage the spending and consumption which accompanies residency and employment, and which contributes to West Berlin's economic vitality. The payments made pursuant to the Berlin Promotion Law were made in anticipation of such economic benefits; therefore, the payments were not gifts but are includable in petitioner's income pursuant to section 61.

We are aware that payments made by the United States pursuant to certain social benefit programs as relief from poverty, unemployment, sickness, aging or lack of education, may be excluded, at least in part, from income. The payments received by petitioner were not predicated on need nor were they made in furtherance of a social program sponsored by the United States. On the contrary, petitioner was eligible for the payments because he was a wage earner; the payments were intended to benefit only the economy of West Berlin. Petitioner's comparison of the Berlin Promotion Law to U.S. social benefit programs is inapposite.

To reflect the foregoing,

*Decision will be entered under Rule 155.*